UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LYNN RICHMOND,<br><br>                    Plaintiff,<br><br>       - against -<br><br>MONTEFIORE MEDICAL CENTER,<br><br>                    Defendant. | **ORDER**<br><br>21 Civ. 8700 (PGG) |

PAUL G. GARDEPHE, U.S.D.J.:

    In this action, Plaintiff Lynn Richmond alleges claims for breach of contract, promissory estoppel, and violation of the New York State Human Rights Law (the "NYSHRL"), N.Y. Exec. Law § 296, et seq., and the New York City Human Rights Law (the "NYCHRL"), N.Y.C. Admin. Code § 8-101, et seq. against Defendant Montefiore Medical Center ("Montefiore" or the "Hospital").  Richmond served as the Hospital's chief strategy officer and as chief of staff to its chief executive officer until a new CEO was appointed in November 2019.  The new CEO quickly fired Richmond and the Hospital refused to pay her the twenty-four months' severance provided for in her employment agreement, contending that the severance payment had not been authorized by the Compensation Committee of the Hospital's board of trustees.

    In a September 21, 2023 order, this Court denied the parties' cross-motions for summary judgment, and set a trial date of October 30, 2023.  (Dkt. No. 123)

    Plaintiff and the Hospital have moved to seal certain exhibits submitted in connection with their cross-motions for summary judgment.  Plaintiff has also moved to maintain

under seal one sentence in Defendant's November 29, 2022 letter seeking permission to move for summary judgment. (Dkt. Nos. 62, 67, 71, 74, 89, 118-19)

Plaintiff asks the Court to seal "certain . . . excerpts" of her deposition transcript and the deposition transcript of her therapist, Elliot Weiner. She contends that these excerpts "contain Plaintiff's sensitive medical information, specifically describing statements Plaintiff made to her mental health practitioner." (Pltf. Sealing Mot. (Dkt. No. 89) at 3) Similarly, in connection with Defendant's November 29, 2022 letter seeking permission to move for summary judgment, Plaintiff contends that a sentence in that letter describing a statement she made to her therapist – and the therapist's notes concerning that statement – should be sealed, for the same reasons. (Dec. 12, 2022 Pltf. Supp Ltr. (Dkt. No. 71); see Nov. 29, 2022 Def. Ltr. (Dkt. No. 65) at 5)

Because Plaintiff seeks damages for emotional distress she alleges she suffered as a result of the Hospital CEO's misconduct (Cmplt. (Dkt. No. 1) at p. 18, ¶ D), Plaintiff has put her mental state at issue. See Witchard v. Montefiore Med. Ctr., No. 05 CIV. 05957 JSRTHK, 2007 WL 3032309, at *1 (S.D.N.Y. Oct. 17, 2007) ("There can be no question that Plaintiff has put her psychological condition in issue in this litigation. She does not assert a garden-variety claim of emotional distress as a result of the alleged discrimination she experienced. Rather, she seeks many millions of dollars in damages, largely on the basis of the severe psychological injury she claims to have suffered as a result of Defendant's conduct. Moreover, Plaintiff contends that one result of Defendant's discriminatory conduct has been her need for psychotherapy. Under these circumstances, the notes of Plaintiff's psychotherapy sessions are highly relevant, and any privilege Plaintiff has in those notes has been waived.") (citing Greenberg v. Smolka, No. 03 Civ. 8572(RWS)(MHD), 2006 WL 116521, at *6 (S.D.N.Y. Apr.

27, 2006)(MHD), 2006 WL 116521, at *6, *8 (S.D.N.Y. Apr. 27, 2006) ("If the plaintiff contends that he has suffered a serious psychological injury, that is, the inducement or aggravation of a diagnosable dysfunction or equivalent injury, he will typically be deemed to have waived the [patient-psychiatrist] privilege."); Jarick v. City of New York, No. 05 Civ. 7626(KMK)(JCF), 2006 WL 1379585, at *1 (S.D.N.Y. May 18, 2006) (where plaintiff alleged "serious, specific psychiatric injuries for which the plaintiff sought and received treatment, . . . the details of her prior treatment are highly relevant, and the plaintiff cannot pick and choose which stressors she will reveal and which she will redact"); Anderson v. City of New York, No. 05 Civ. 54422(ERK)(MDG), 2006 WL 1134117, at *1 (E.D.N.Y. Apr. 28, 2006) (where plaintiff claims to have suffered emotional distress as a result of the defendant's conduct, "plaintiff has placed her mental condition at issue . . . and consequently has waived her right to prevent the disclosure of her mental health records"); Cuoco v. United States Bureau of Prisons, No. 98 Civ. 9009(WHP), 2003 WL 1618530, at *2 (S.D.N.Y. Mar. 27, 2003) ("[Plaintiff] directly put her mental and emotional state at issue when she claimed damages for emotional distress in this action. That damages claim consequently waived any psychotherapist-patient privilege for . . . psychologist's notes and statements relevant to the time and subject matter of this action.")) (alterations in Witchard).

Plaintiff also seeks to seal "the names of three innocent non-parties to this lawsuit who came forward with complaints of gender discrimination and/or sexual harassment against [Hospital CEO] Dr. [Philip] Ozuah, the same individual who made the decision to terminate Plaintiff's employment." (Pltf. Sealing Mot. (Dkt. No. 89) at 4)

The Hospital does not take a position on Plaintiff's motion to seal.

3

The Hospital seeks to seal (1) "[m]aterials reflecting Montefiore's strategy related to executive compensation," because they contain "highly sensitive, commercially competitive information"; (2) "[m]aterials disclosing specific compensation information for executives other than Plaintiff"; (3) "[m]aterials disclosing information that could implicate the personal safety and security of witnesses"; (4) "third-party witness names and private information of non-parties"; and (5) "confidential agreements with third parties." (Def. Sealing Mot. (Dkt. No. 74); Def. Supp. Sealing Mot. (Dkt. No. 119) at 4)

Plaintiff opposes Defendant's application "to file under seal the substance of . . . complaints against Dr. Ozuah" (Pltf. Sealing Mot. (Dkt. No. 89) at 4 n.1), but does not otherwise oppose Defendant's application. (Pltf. Supp. Sealing Mot. (Dkt. No. 118) at 1)

## I. LEGAL STANDARDS

As a general matter, documents filed in support of a motion "are judicial documents to which a presumption of immediate public access attaches under both the common law and the First Amendment." Lugosch v. Pyramid Co. of Onondaga, 435 F.3d 110, 126 (2d Cir. 2006). This "presumption of access . . . can be overcome only by specific, on-the-record findings that higher values necessitate a narrowly tailored sealing." Id.

The Second Circuit has articulated a three-step process for determining whether documents should be placed under seal. First, a court must determine whether the presumption of access attaches. A presumption of access attaches to any item that constitutes a "judicial document" – i.e., an "'item . . . relevant to the performance of the judicial function and useful in the judicial process.'" Id. at 115 (quoting United States v. Amodeo, 44 F.3d 141, 145 (2d Cir. 1995) ("Amodeo I")). Second, if the court determines that the item to be sealed is a judicial document, the court must then determine the weight of the presumption of access. "'[T]he weight to be given the presumption of access must be governed by the role of the material at

4

issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts.'" Id. at 119 (quoting United States v. Amodeo, 71 F.3d 1044, 1049 (2d Cir. 1995) ("Amodeo II")). "'Generally, the information will fall somewhere on a continuum from matters that directly affect an adjudication to matters that come within a court's purview solely to insure their irrelevance.'" Id. (quoting Amodeo II at 1049). Finally, after determining the weight of the presumption of access, the court must "'balance competing considerations against it.'" Id. at 120 (quoting Amodeo II at 1050). "Such countervailing factors include but are not limited to 'the danger of impairing law enforcement or judicial efficiency' and 'the privacy interests of those resisting disclosure.'" Id. (quoting Amodeo II at 1050).

## II.  ANALYSIS

As an initial matter, the materials at issue were submitted in connection with the parties' cross-motions for summary judgment, and are clearly "judicial documents." Moreover, there is a strong presumption of access to these submissions because they will "directly affect" this Court's adjudication of this case. See, e.g., Standard Inv. Chartered, Inc. v. Nat'l Assn. of Sec. Dealers, Inc., No. 07 Civ. 2014, 2008 WL 199537, at *16 (S.D.N.Y. Jan. 22, 2008) ("Motion papers are judicial documents and are thus subject to a strong presumption of access under the First Amendment."). To rebut the strong presumption of public access here, the parties must offer specific facts "demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest." Lugosch, 435 F.3d at 120.

The Court considers below whether the parties have made such a showing, with respect to each category of documents that they wish to seal.

A.  **Plaintiff's Sealing Request**

1.  **Therapy Records**

Plaintiff seeks to maintain under seal the following mental health-related documents:

- excerpts from Plaintiff's deposition that she submitted in support of her motion for summary judgment (Sikon Decl., Ex. 2 (Dkt. No. 99-2));

- excerpts from the deposition of Plaintiff's therapist that she submitted in opposition to Defendant's motion for summary judgment (Sikon Decl., Ex. 54 (Dkt. No. 115-10));

- excerpts from the deposition of Plaintiff's therapist that Montefiore submitted in connection with its motion for summary judgment (Gerson Decl., Ex. 45 (Dkt. No. 84-13)) and its reply brief (Gerson Decl., Ex. 71 (Dkt. No. 93-8));

- the therapist's notes from two therapy sessions, which Montefiore submitted with its reply brief in support of its motion for summary judgment (Gerson Decl., Ex. 69 (Dkt. No. 93-6));

- excerpts from the parties' Rule 56.1 statements and briefs (Dkt. Nos. 80, 82, 86, 88, 97, 98, 102, 105-06, 113-14) that summarize or quote the above materials; and

- one sentence in Defendant's November 29, 2022 letter seeking permission to move for summary judgment (Dkt. No. 65).

(See Dec. 2, 2022 Pltf. Sealing Ltr. (Dkt. No. 67); Dec. 12, 2022 Pltf. Supp. Sealing Ltr. (Dkt. No. 71); Pltf. Sealing Mot. (Dkt. No. 89) at 3-4; Pltf. Supp. Sealing Mot. (Dkt. No. 118) at 1-3)[1]

The above materials all relate to statements Richmond made during therapy sessions. This material can be divided into two categories:

---

[1] Plaintiff does not seek to maintain under seal the deposition transcript of Dr. Laurie Stevens – an executive coach – which Defendant initially submitted under seal as related to Plaintiff's mental health. (Gerson Decl., Ex. 67 (Dkt. No. 93-5)) Accordingly, this exhibit will be unsealed.

The first category consists of deposition testimony from Plaintiff and her therapist concerning Plaintiff's symptoms, diagnoses, and course of treatment. This testimony is in the record because Plaintiff offered it in opposing Defendant's motion for summary judgment – even though Defendant addresses only liability in its opening summary judgment brief. (Dkt. No. 80). In opposing Defendant's motion for summary judgment, Plaintiff contends that, "[a]s the result of the discriminatory termination by Montefiore," she experienced certain adverse mental health effects. (Pltf. Sum. J. Opp. (Dkt. No. 114) at 15) Richmond goes on to describe her mental health treatment in detail in her Local Rule 56.1 Counterstatement filed in opposition to Defendant's motion for summary judgment (Dkt. No. 113 ¶¶ 359-69), and attaches materials documenting her mental health treatment. Defendant, in turn, responds to Richmond's factual assertions in its Local Rule 56.1 Reply Statement in further support of its motion for summary judgment (Dkt. No. 88 ¶¶ 359-69), and attaches certain mental health-related materials as evidentiary support for its responses to Plaintiff's allegations.

The second category consists of statements Plaintiff made to her therapist, during the time period relevant to this lawsuit, regarding her job performance at the Hospital. These statements are reflected in Plaintiff's deposition testimony, her therapist's deposition testimony, and the therapist's notes. The Hospital cites these statements in support of its motion for summary judgment on Plaintiff's discrimination claims, and contends that these statements constitute highly relevant admissions, because they go directly to the Hospital's argument that it had a legitimate, non-discriminatory reason for terminating Plaintiff's employment. (See Nov. 29, 2022 Def. Ltr. (Dkt. No. 65) at 5; Def. Sum. J. Br. (Dkt. No. 80) at 8, 14, 30; Def. Sum. J. Reply Br. (Dkt. No. 86) at 14; Def. R. 56.1 Stmt. (Dkt. No. 82) ¶ 131) In opposing Defendant's motion for summary judgment, Richmond cites additional testimony from herself and her

7

therapist to provide additional context for her alleged admissions. (Pltf. Sum. J. Opp. (Dkt. No. 114) at 29; Pltf. R. 56.1 Cntrstmt. (Dkt. No. 113) ¶¶ 353-58)

In support of her sealing motion, Plaintiff states that she seeks

> emotional distress as one of several types of damages flowing from her discriminatory termination. However, comments Plaintiff made to her therapist are wholly irrelevant to the issue in the parties' summary judgment briefing, which relates to whether Defendant had a legitimate non-discriminatory reason for Plaintiff's termination. . . . [A]ny statements made by Plaintiff to her mental health practitioners prior to her termination are irrelevant for determining her employer's discriminatory intent. Thus, Plaintiff respectfully submits that little if no weight should be given to the public's presumption of access to this information.
>
> On the other hand, significant weight should be given to Plaintiff's privacy interests with respect to this information. Public disclosure of Plaintiff's sensitive medical information would be a significant intrusion into her privacy interests and could also negatively affect her ongoing mitigation efforts and have a significant chilling affect with respect to what Plaintiff and other individuals choose to disclose to their mental health practitioners. For these reasons, courts regularly permit such medical records and information to be filed under seal.

(Pltf. Sealing Mot. (Dkt. No. 89) at 3)

As to the first category, Plaintiff's contention that the mental health treatment she received is "wholly irrelevant to the issue in the parties' summary judgment briefing" is not persuasive. <u>Indeed, Plaintiff offered this evidence in opposition to the Hospital's motion for summary judgment, even though the Hospital had not made any arguments regarding Plaintiff's emotional distress damages in its opening brief.</u> In doing so, Plaintiff implicitly represented that this material was relevant to the Court's resolution of Defendant's motion. Having asked this Court to rely on this material to deny the Hospital's motion, Plaintiff will not now be heard to say that this material is "irrelevant" to Defendant's motion.

As to the second category, the statement at issue reflects Plaintiff's apparent belief – at least at that time – that her job performance at the Hospital was poor. This evidence thus directly rebuts Plaintiff's claim – in seeking summary judgment and in opposing the

Hospital's motion for summary judgment – that she had an "exemplary career at Montefiore" and was "highly competent" in her role. (Pltf. Sum. J. Opp. (Dkt. No. 114) at 7 (quotation omitted; capitalization altered); see also Richmond Decl. (Dkt. No. 104-3) ¶¶ 13-53 (detailing her accomplishments at Montefiore)) Indeed, Plaintiff concedes that the probative value of her statements to her therapist about her job performance presents a jury question. (See id. at 29 ("the relative import of Ms. Richmond's statements [to her therapist regarding her job performance] is for the jury to decide"))

As discussed above, where a plaintiff seeks emotional distress damages, she has put her mental state at issue, and cannot avoid discovery concerning mental health treatment she has received. Indeed, until now, Plaintiff has never argued that evidence regarding her mental health treatment and therapy, and her mental state, are irrelevant to the issues in this case. Plaintiff (1) has never sought a protective order regarding discovery about her mental health treatment; (2) freely testified at deposition about this topic and produced her therapist for a deposition; and (3) has not moved to strike the mental health-related materials as privileged. Indeed, Plaintiff offered most of the mental health treatment material at issue in her opposition to the Hospital's summary judgment motion.

In sum, in arguing that "any statements made by Plaintiff to her mental health practitioners prior to her termination are irrelevant for determining her employer's discriminatory intent," and that, therefore, "little if no weight should be given to the public's presumption of access to this information" (Pltf. Sealing Mot. (Dkt. No. 89) at 3), Plaintiff merely obfuscates. The evidence regarding Plaintiff's mental state goes directly to the issue of whether the Hospital had a legitimate, non-discriminatory reason for firing Plaintiff, and to whether Plaintiff has a right to emotional distress damages as a result of the Hospital CEO's

conduct. The Court concludes that the mental therapy evidence that Plaintiff seeks to seal concerns "'matters that directly affect an adjudication.'" Lugosch, 435 F.3d at 119 (quoting Amodeo II, 71 F.3d at 1049). Accordingly, the presumption of public access is quite strong.

As to the countervailing consideration of Plaintiff's privacy interest, Plaintiff has cited only boilerplate case law regarding the general right to privacy in medical records, including documents pertaining to mental health treatment. Plaintiff has cited no case regarding the issues here – i.e., what weight to give to a plaintiff's privacy interest where (1) plaintiff has cited to mental therapy evidence in arguing that defendant's motion for summary judgment should be denied, and has done so even though defendant's motion did not address plaintiff's emotional distress claim; and (2) the mental therapy evidence bears directly on a critical issue at summary judgment – whether Defendant had a legitimate, non-discriminatory reason for terminating Plaintiff's employment.

Accordingly, Plaintiff's motion to seal will be generally denied as to the testimony and therapist notes concerning her mental health treatment, both with respect to the summary judgment materials and Defendant's November 29, 2022 pre-motion letter. To the extent that these materials discuss personal details regarding Plaintiff's husband and child, they may be maintained under seal.[2]

2. **Names of Third Parties**

Plaintiff states that she "has redacted the names of three innocent non-parties to this lawsuit who came forward with complaints of gender discrimination and/or sexual

---

[2] The deposition testimony and therapist's notes regarding Plaintiff's mental health treatment discuss personal details about Plaintiff's husband and child. (Sikon Decl., Ex. 2 (Richmond Dep.) (Dkt. No. 99-2) at 264; Gerson Decl., Ex. 69 (Therapist's Notes) (Dkt. No. 93-6) at 2) This material may be maintained under seal because it is irrelevant to the instant dispute and implicates the privacy interests of non-parties.

harassment against Dr. Ozuah, the same individual who made the decision to terminate Plaintiff's employment. The names of these individuals should be redacted because '[t]his information is unrelated to the resolution of this case and implicates the privacy interests of non-parties.'" (Pltf. Sealing Mot. (Dkt. No. 39) at 4 (quoting Rowe v. Google LLC, No. 19 Civ. 8655, 2022 U.S. Dist. LEXIS 173468, at *11 (S.D.N.Y. Sep. 26, 2022)) (brackets in Pltf. Sealing Mot.))

While the names of the complaining witnesses will likely not remain secret in the event the parties proceed to trial, the Court will permit them to remain sealed for purposes of summary judgment. The complaining witnesses – who are not parties to this case – have a compelling privacy interest, and the disclosure of their names at summary judgment would add little to the public's understanding of this Court's ruling. The Court's ruling is the same as to the names of Hospital employees – other than CEO Ozuah – whom Plaintiff has accused of harassment. The contents of the harassment complaints will otherwise be unsealed, however. See Bronx Conservatory of Music, Inc. v. Kwoka, No. 21CV1732ATBCM, 2021 WL 2850632, at *3 (S.D.N.Y. July 8, 2021) (denying employer's motion to seal allegations of sexual harassment; "it is well-settled that 'generalized concerns of adverse publicity' and reputational injury – the only potential harms articulated in plaintiff's letter-motion – cannot justify an order sealing a core judicial document.") (quoting Bernsten v. O'Reilly, 307 F. Supp. 3d 161, 169 (S.D.N.Y. 2018) (internal alterations omitted)).

**B.     Defendant's Sealing Request**

**1.     Executive Compensation Strategy**

The Hospital contends that "[m]aterials reflecting [its] strategy related to executive compensation are highly sensitive, commercially competitive information. . . . The strategies that Montefiore employs to attract and retain its top talent are highly confidential. . . .

11

Public disclosure of these strategies could give Montefiore's competitors an opportunity to lure away Montefiore's most sought-after executives." (Def. Sealing Mot. (Dkt. No. 74) at 2)

As to its own submissions, the "executive compensation strategy" materials Defendant seeks to maintain under seal include the following:

> Portions of "reasonableness opinions" prepared by Montefiore's outside compensation consultant, SullivanCotter, regarding Richmond's compensation package and CFO Colleen Blye's compensation package. The proposed redactions include descriptions of how SullivanCotter used "peer groups" of other hospitals to assess compensation, and descriptions of the salary and benefits – including medical, dental, retirement, and severance – in Montefiore's compensation packages, as well as information about what is standard at Montefiore and its peers. (Gerson Decl., Ex. 6 (Dkt. No. 84-1); Gerson Decl., Ex. 56 (Dkt. No. 110-3));

> A February 2019 SullivanCotter slide deck entitled "FY2019 Executive Annual Incentive Plan" (Gerson Decl., Ex. 10 (Dkt. No. 84-3));

> Portions of a December 2018 SullivanCotter slide deck entitled "FY2019 Executive Market Salary Adjustments" (Gerson Decl., Ex. 11 (Dkt. No. 84-4));

> Portions of a November 2015 SullivanCotter slide deck entitled "Compensation Committee of the Board of Trustees: New Member Orientation Materials." The proposed redactions describe the "peer group" of comparable hospitals and include information on "pay components" and various benefits. (Gerson Decl., Ex. 17 (Dkt. No. 84-5));

> Portions of the minutes of October 2013, November 2014, December 2014, May 2019, and October 2019 Montefiore Board of Trustees meetings. The proposed redactions include discussions of executive incentive pay plans and executive retirement plans, as well as discussion of various success "benchmarks" at Montefiore, as relevant to executive compensation. (Gerson Decl., Exs. 20, 30-33 (Dkt. Nos. 84-6, -9 to -12)); and

> Montefiore's executive severance plan summary document (Gerson Decl., Ex. 55 (Dkt. No. 110-2)).

Defendant proposes similar redactions to the Compensation Committee minutes and SullivanCotter slide decks that have been included as exhibits in Plaintiff's submissions. (See Def. Supp. Sealing Mot. (Dkt. No. 119) at 3 (citing Sikon Decl., Exs. 3, 7, 28-33, 40, 43-46))

Defendant also proposes sealing the employment agreements of CFO Colleen Blye and Special Advisor for Business Affairs Stanley Jacobson (Sikon Decl., Exs. 41, 48 (Dkt. Nos. 99-32, 115-6)) in their entirety.

Defendant also seeks to redact portions of Board meeting minutes that relate to topics not at issue in the instant case, such as summaries of updates to the full Board from committees other than the Compensation Committee and summaries of various transactions in which Montefiore engaged. (E.g., Gerson Decl., Ex. 21 (June 24, 2014 Board of Trustees Minutes) (Dkt. No. 84-7) at 3-9))

Finally, Defendant proposes sealing the portions of the parties' briefs and Rule 56.1 statements that refer to the above materials. (Def. Supp. Sealing Mot. (Dkt. No. 119) at 3)

\*   \*   \*   \*

Defendant's proposed redactions regarding "compensation strategy" are overbroad and, for the most part, not supported by law.

In support of its application to seal SullivanCotter's descriptions of how it analyzes executive compensation – such as "peer group" information or the steps of the analyses SullivanCotter conducted – Montefiore has submitted the declaration of SullivanCotter managing director Kathy Hastings, who states that "[a]s part of its work, SullivanCotter performs market comparisons. These market comparisons are based on SullivanCotter's proprietary surveys of peer organizations. The individualized survey results are kept entirely confidential and SullivanCotter shares only high-level summary statistics without disclosing any individualized data on a peer organization's compensation or compensation components." (Hastings Decl. (Dkt. No. 76) ¶¶ 6-8) The materials that Montefiore seeks to seal do not include "any individualized data" on the compensation at Montefiore's "peer organizations," however, but

13

rather, industrywide averages and trend information. Moreover, the underlying data that Defendant seeks to seal is by now four to ten years old, and thus entirely outdated. Montefiore has also not explained how the disclosure of this information would cause it competitive harm. Montefiore has likewise not explained how the disclosure of SullivanCotter's methodology would cause Montefiore competitive harm. And Defendant has submitted no case law in support of that proposition.

Similarly, Montefiore has submitted no case law or other authority supporting its argument that it would suffer competitive harm from unsealing narrative descriptions of the benefits it offers – such as descriptions of its severance plan, retirement plan, incentive plan, or medical benefits – and how they compare to industry standards. Disclosure of the fact that Montefiore – years ago – offered standard 401k and dental benefits to its executives hardly seems likely to cause competitive harm to Defendant. The only support Montefiore offers for sealing such materials is the assertion of Hastings, in her declaration, that "documents disclosing Montefiore's strategies and metrics for compensating executives; documents concerning the structures of compensation programs (such as Montefiore's bonus/ incentive plans and retirement plans); compensation-related policies, such as severance policies or special executive benefit programs; and documents analyzing executive compensation versus the market . . . would be considered highly commercially sensitive." (Hastings Decl. (Dkt. No. 76) ¶ 7) This statement is conclusory and provides no basis for the Court to find a countervailing factor sufficient to overcome the public's right of access. In sum, Montefiore has not demonstrated any adverse competitive consequence that would result from the disclosure of this outdated information.

As to Board presentations regarding transactions not at issue (see, e.g., June 24, 2014 Board of Trustees minutes (Dkt. No. 84-7) at 3-9), Montefiore merely states that "[t]he redacted information reflects issues concerning strategic decisions of the Board of Trustees relating to various aspects of Montefiore operations, finances, and acquisitions. This information is not relevant to the claims or defenses in this case. This information is competitively sensitive commercial information, and its disclosure could cause competitive harm to Montefiore by giving Montefiore's competitors insight into its finances and operations." (Gerson Sealing Decl. (Dkt. No. 75) ¶ 11.a)  This assertion is likewise conclusory and does not permit this Court to make the findings necessary to order sealing under Lugosch.  Montefiore does not discuss the individual transactions reflected in these documents or explain how unsealing the descriptions of them would harm Montefiore.  This aspect of Montefiore's sealing motion is thus unsupported.

Montefiore has likewise not explained why it is necessary to seal the employment agreements of Colleen Blye and Stanley Jacobson in full, nor has it cited any case law in support of this aspect of its sealing application.  Again, Montefiore makes no effort to explain how disclosure of its compensation arrangements with Blye and Jacobson in 2019 would expose it to competitive harm in 2023.

Accordingly, Montefiore's motion to seal is denied to the extent that it seeks to seal (1) materials reflecting SullivanCotter's analytical methods; (2) narrative descriptions of compensation and benefits; (3) Board presentations regarding various transactions; and (4) the entirety of the employment agreements of Colleen Blye and Stanley Jacobson.  The portions of the parties' briefs and Rule 56.1 statements that refer to these materials may likewise not remain under seal.

To the extent that the parties' submissions reflect (1) average compensation at Montefiore, and (2) the percentiles into which Montefiore's various benefits and salaries fall with respect to its peer group for 2019 or some earlier period, Defendant has made no showing that disclosure of this outdated data would subject it to competitive harm. Accordingly, sealing as to these materials is likewise denied.

### 2. Specific Compensation Information for Employees Other Than Plaintiff

Defendant seeks to redact the actual and proposed salaries and other compensation information of individual Montefiore executives other than Plaintiff, which appear in numerous documents in the record (see proposed redactions of salaries and other individualized compensation information in Gerson Decl., Exs. 8, 10, 17, 20, 24, 32, 55, 56 (Dkt. Nos. 84-2 through -6, -8, and -11; 110-2 to -3)), as well as corresponding references in the parties' motion papers and Rule 56.1 statements.

"[D]isclosure of individual . . . compensation raises . . . unique privacy concerns." Oliver Wyman, 282 F. Supp. 3d at 706. Therefore, individual salaries and other numerical information – such as individual incentive targets – will remain under seal. All information regarding the number of months of severance, however, will be unsealed, because Montefiore's practices as to severance are central to the parties' dispute.

Defendant has not demonstrated a need to seal non-numerical compensation information – such as narrative descriptions of various benefits provided to individuals. Accordingly, no such material may remain under seal.

### 3. Information That Implicates Personal Safety

Defendant seeks to seal a witness's statement that CEO Ozuah carried a gun in his office, arguing that this "information . . . implicates personal safety." (Pltf. Cntrstmt. (Dkt. No.

113) ¶ 333) Defendant has not explained how the disclosure of this information would endanger anyone's personal safety, however, nor has the Hospital cited any case law that supports its position. The motion to seal paragraph 333 of Plaintiff's Rule 56.1 Counterstatement and the corresponding exhibits regarding this topic is denied.

### 4. Third-Party Witness Names and Private Information of Non-Parties

Montefiore has moved to seal the names of various Montefiore employees who exchanged texts in which they disparage CEO Ozuah and Plaintiff. (Def. Supp. Sealing Mot. (Dkt. No. 119) at 4; Montefiore Employee Text Message Threads (Dkt. Nos. 115-17 through -22)) The motion to seal the names of these non-party witnesses will be granted for the reasons described above.

Defendant also contends that "certain text messages should remain redacted because they contain irrelevant gossip about an individual who, although the subject of Complaint allegations, is not personally named in the litigation." (Id.) The individual to whom Defendant is referring, however, is CEO Ozuah, who is at the center of the instant dispute.[3] To reiterate, embarrassment is not a basis for sealing. Bronx Conservatory of Music, 2021 WL 2850632, at *3. The motion to redact the contents of the text messages will be denied.

### 5. Confidential Agreements with Third Parties

Defendant seeks to seal in full "confidential settlement communications and a confidential settlement agreement with a third party." (Def. Supp. Sealing Mot. (Dkt. No. 119) at 4-5) At issue are the following documents: an April 2012 demand letter written to Montefiore (Sikon Decl., Ex. 58 (Dkt. No. 115-14); a July 2012 settlement agreement between Montefiore

---

[3] To the extent that the text messages in Plaintiff's Exhibits 62 and 66 (Dkt. Nos. 115-18 and 115-22) that the Hospital seeks to redact discuss other non-parties, they are not named, and cannot be identified from the texts.

17

and the person who wrote the demand letter (Sikon Decl., Ex. 59 (Dkt. No. 115-15)); and a revised April 2012 demand letter from the same person. (Sikon Decl., Ex. 60 (Dkt. No. 115-16)) The Court has not given these documents weight in resolving the parties' cross-motions for summary judgment, and Defendant's request is properly supported by recent cases granting such relief under Lugosch. See City of Almaty, Kazakhstan v. Ablyazov, No. 15-CV-5345 (AJN), 2021 WL 1177737, at *2 (S.D.N.Y. Mar. 29, 2021) (granting motion to seal settlement agreement in its entirety); Adler v. Solar Power, Inc., No. 16 CV 1635-LTS-GWG, 2019 WL 13214943, at *2 (S.D.N.Y. Aug. 22, 2019) (granting motion to seal "settlement agreements with third parties"); see also Fed. R. Evid. 408. Accordingly, the motion to seal the settlement agreement and settlement communications – and to redact corresponding passages of the parties' briefs and Rule 56.1 statements and briefs – will be granted.

### C. Information Initially Filed Under Seal Pursuant to the Protective Order

Finally, to the extent that the parties have filed exhibits under seal to comply with the February 15, 2022 stipulated protective order in this case (Dkt. No. 25) – as their sealing motions represent (Pltf. Sealing Mot. (Dkt. No. 89) at 2; Def. Sealing Mot. (Dkt. No. 74) at 3) – that is not, standing alone, a basis for continued sealing. See Indiv. R. of Prac. II.B ("[T]he parties' consent or the fact that information is subject to a confidentiality agreement between litigants is not, by itself, a valid basis to overcome the presumption in favor of public access to judicial documents." (citing In re Gen. Motors LLC Ignition Switch Litig., No. 14- MD-2543(JMF), 2015 WL 4750774, at *4 (S.D.N.Y. Aug. 11, 2015)). This Court authorizes continued sealing of summary judgment materials only to the extent specified above.

### CONCLUSION

The parties' motions to seal are granted in part and denied in part as set forth above. The parties are directed to file on the public docket versions of the currently sealed

exhibits, briefing, and Rule 56.1 statements that contain only redactions authorized by this Order. The parties' revised submissions are due by **October 2, 2023**.

The Clerk of Court is directed to change the viewing level of Defendant's November 29, 2022 letter (Dkt. No. 65) to public, and to terminate the motions (Dkt. Nos. 62, 67, 74, 89).

Dated: New York, New York
September 25, 2023

SO ORDERED.

_____
Paul G. Gardephe
United States District Judge